UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUN THE WORLD INC., <br><br> Plaintiff, <br><br> v. <br><br> XUAN JIANG, <br><br> Defendant. | Case No. 23-cv-03130-AMO <br><br> **ORDER GRANTING FORMER COUNTERCLAIM DEFENDANTS' MOTIONS FOR ATTORNEY'S FEES** <br><br> Re: Dkt. Nos. 122, 124 |

Former Counterclaim Defendants Run The World, Inc. ("RTW"), and Xiaoyin Qu (together "Counterclaim Defendants") both filed Motions for Attorney's Fees related to their respective special motions to strike pursuant to California's Anti-SLAPP statute. The Motions for Attorney's Fees were heard before this Court on March 13, 2025. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the motions for the following reasons.

I. **BACKGROUND**

This Order assumes familiarity with the factual allegations underlying this case, recounted more fully in its Order Granting Counterclaim Defendants' Motions to Dismiss (ECF 114) and its Order Denying Defendant Xuan Jiang's Motion to Dismiss for Lack of Subject Matter Jurisdiction, issued in conjunction with this Order. The Court briefly recounts the procedural history because it informs Counterclaim Defendants' Motions for Attorney's Fees.

RTW and Qu jointly filed their Special Motion to Strike SLAPP Claims on January 9, 2024, seeking elimination of Qu's claim for abuse of process ("SLAPP Claims").[1]  ECF 54.  RTW

---

[1] California law allows for early resolution of a Strategic Lawsuit Against Public Participation ("SLAPP") by way of an "anti-SLAPP" special motion to strike. Cal. Code Civ. Proc. § 425.16.

1    and Qu also filed a joint Motion to Dismiss on the same date. ECF 52. Jiang responded to the

2    Motion to Dismiss by filing her First Amended Counterclaims and a brief Opposition noting the

3    same on February 6, 2024. ECF 58, 59. She also opposed the Special Motions to Strike. ECF 60.

4    RTW understandably began preparing a reply in support of its Special Motion to Strike, incurring

5    $4,365 in fees. *See* Hayward Decl. (ECF 123) ¶¶ 8, 20(b). But on February 15, 2024, before the

6    reply was filed, the Court entered an Order terminating as moot the pending motions to dismiss,

7    "as well as their special motions to strike at Dkt. No. [51] and [54] in light of Xuan Jiang's

8    amended counterclaim." ECF 66. The Court also stated, "The Counterclaim-Defendants may

9    renew their respective motions if appropriate in response to the amended counterclaim." *Id.*

10   Rather than drop the SLAPP Claims in response to the RTW's and Qu's Special Motions

11   to Strike, Jiang doubled-down in her First Amended Counterclaim by re-asserting the SLAPP

12   Claims and augmenting them with argument and case citations. FACC (ECF 58) ¶¶ 61, 76, 90,

13   112, 118, 237-242. Counsel for RTW began preparing a Renewed Special Motion to Strike.

14   Hayward Decl. ¶ 11. Before RTW filed the Renewed Motion, Jiang proposed a stipulation to

15   permit her to file a Second Amended Counterclaim. *Id.* ¶ 10. By this time, RTW and Qu had

16   jointly incurred more than $27,000 in attorney fees preparing the Special Motion to Strike and

17   related portions of the Motion to Dismiss Counterclaims. Conrad Decl. (ECF 55); Hayward Decl.

18   ¶ 6. Lastly, RTW incurred $3,800 preparing a Renewed Special Motion to Strike before learning

19   that Jiang wished to finally stipulate to drop the SLAPP Claims through further amendment. *Id.*,

20   ¶¶ 11, 12(c).

21   The parties filed the Stipulation on February 26, 2024, and the Court granted the

22   Stipulation by Order entered on February 27, 2024. ECF 77, 79. Jiang filed her Second Amended

23   Counterclaim ("SACC") on February 26, 2024, which was deemed filed on February 27, 2024.

24   ECF 78. *See also* ECF 79 at 4. The parties state in the Stipulation's recitals that

25   "Counterclaimant Xuan Jiang seeks to further amend her Counterclaims to moot the issues raised

26   in Counterclaim-Defendants' now-terminated Special Motions to Strike[.]" ECF 79 at 2.

## II. DISCUSSION

Counterclaim Defendants now move to recover attorney's fees incurred in relation to their anti-SLAPP motion. *See* RTW Mot. (ECF 122); Qu Mot. (ECF 124). Jiang opposes. Opp. (ECF 127).

### A. Legal Standard

California's anti-SLAPP statute protects, among other things, any conduct "in furtherance of a person's right of free speech," including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(e). "Under California's anti-SLAPP statute, a defendant may bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity." *Barry v. State Bar of California*, 2 Cal. 5th 318, 320 (2017); Cal. Code Civ. Pro. § 425.16. Parties sued in federal court can bring anti-SLAPP motions to strike state law claims and are entitled to attorney's fees and costs when they prevail. *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). "California's anti-SLAPP ('Strategic Lawsuit Against Public Participation') statute provides a mechanism for a defendant to strike civil actions brought primarily to chill the exercise of free speech." *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 1220, 1221 (S.D. Cal. 2002).

"[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). The purpose of the fee-shifting provision is "to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Id.* at 1131 (internal quotation omitted). Because "[t]he anti-SLAPP statute reflects the Legislature's 'strong preference for awarding attorney fees to successful defendants,' " courts interpret the statute "broadly to favor an award of attorney fees to a partially successful defendant." *Lin v. City of Pleasanton*, 176 Cal. App. 4th 408, 425-26 (2009), as modified on denial of reh'g (Aug. 11, 2009).

### B. Entitlement to Fees

Jiang argues that Counterclaim Defendants are not entitled to attorney's fee awards because they were not "prevailing parties" under the anti-SLAPP statute. *See* Opp. at 8-12. "A defendant that brings an anti-SLAPP motion to strike may 'prevail,' even if the court did not actually grant the motion. Where the plaintiff dismisses the alleged SLAPP before the court rules on a pending motion to strike, the mooting of the merits of the motion does not bar a defendant from recovering attorney fees." *Law Offices of Bruce Altschund v. Wilson*, 632 Fed. App'x. 321 (9th Cir. 2015) (unpublished) (affirming award of attorney fees and costs to defendant where plaintiff dismissed the action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) after the district court took defendant's anti-SLAPP motion under submission). Federal district courts regularly rely on this and related California Court of Appeal authority in support of the premise that "where the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending," the defendant is considered the prevailing party, and "the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under . . . section 425.16(c)." *Garrett v. Hine*, No. 121CV00845DADBAK, 2022 WL 2067903, at *7 (E.D. Cal. June 8, 2022) (quoting *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998)); *see also Mireskandari v. Mail*, No. 12-cv-02943-MMM-FFM, 2014 WL 12561581, at *6 (C.D. Cal. Aug. 4, 2014); *Ryans v. Editions Ltd. West, Inc.*, No. 06-cv-4812-PVT, 2007 WL 2778408, at *3 (N.D. Cal. Sept. 21, 2007). A plaintiff's amendment of a complaint to remove SLAPP claims "is tantamount to a voluntary dismissal of those claims," particularly where those claims "would likely have become subject to another anti-SLAPP motion." *Art of Living Found. v. Does 1-10*, No. 5:10-cv-05022-LHK, 2012 WL 1565281, at *25 (N.D. Cal. May 1, 2012); *see also VACC, Inc. v. Davis*, No. 18-CV-03454-JCS, 2019 WL 1460201, at *11 (N.D. Cal. Apr. 2, 2019).

Here, Jiang did not remedy the SLAPP Claims through her First Amended Counterclaims. *See* FACC (ECF 58) ¶¶ 76, 90, 112, 118, 237-242; *see also* ECF 58-3 (redline comparison of original and First Amended Counterclaims). She instead announced her intent to abandon the SLAPP Claims and pursue the SACC, essentially granting the relief RTW and the other Counterclaim Defendants sought through the anti-SLAPP motion and joinder. *See Art of Living*

4

*Found.*, 2012 WL 1565281, at *25. Counterclaim-Defendants stipulated to the filing of the SACC and expressly reserved their right to seek an award of attorney's fees and costs pursuant to the anti-SLAPP statute. ECF 77 (Counterclaim Defendants "reserve the right to seek statutory attorney's fees and costs for their work pursuing relief under the Anti-SLAPP law, prior to the amendment").

Jiang argues that Counterclaim Defendants did not prevail on their anti-SLAPP motion because there was no anti-SLAPP motion pending at the time she filed the SACC, which abandoned the offending claim for abuse of process. Opp. (ECF 127) at 5-8. Jiang focuses on the fact that the motions were no longer "pending" when she abandoned the SLAPP Claim because they had been terminated as moot. The Court's February 15, 2024 Order clearly advised the parties that the pending Motion to Strike was terminated as moot (as opposed to "denied" or otherwise resolved on the merits) due to the filing of the FACC, but that "The Counterclaim-Defendants may renew their respective motions if appropriate in response to the amended counterclaim." *Id.* (ECF 66). Regardless of whether an anti-SLAPP motion was pending at the time she gave up her claim for abuse of process, the arguments set forth in the anti-SLAPP motions clearly served as the catalyst for Jiang's abandonment of her SLAPP Claim. *See* ECF 77 ("Jiang seeks to further amend her Counterclaims to moot the issues raised in Counterclaim-Defendants' " anti-SLAPP motions). The Court concludes that Counterclaim Defendants obtained meaningful results from their anti-SLAPP motions by causing Jiang to abandon the abuse of process claim in the SACC. *Cf. Law Offices of Bruce Altschund v. Wilson*, 632 Fed. App'x 321 (9th Cir. 2015) (unpublished).

Jiang attempts to distinguish *Altschund* and *Coltrain* on the grounds that the anti-SLAPP motions in those cases were pending when the defendant decided to dismiss the SLAPP claims. In *Altschund*, the Ninth Circuit affirmed an award of attorney fees under the California anti-SLAPP statute where the plaintiff voluntarily dismissed the action while an anti-SLAPP motion was pending but "under submission." *Id.*, 632 Fed. App'x at 322. Although a special motion to strike was indeed pending in *Altschund* at the time of the voluntarily dismissal, the pendency of the motion was not the determining factor in resolving whether the movant prevailed at the time the

5

opposing party gave up the SLAPP claim. *Id.* at 322 ("A defendant that brings an anti-SLAPP motion to strike may 'prevail,' even if the court did not actually grant the motion. Where the plaintiff dismisses the alleged SLAPP before the court rules on a pending motion to strike, the mooting of the merits of the motion does not bar a defendant from recovering attorney fees."). Rather, the motion had not been denied, anti-SLAPP remedies remained available, and the movant realized its objectives in the litigation – the elimination of the offending claim. The same can be said here.

In *Coltrain*, the court awarded the defendant attorney fees based on its anti-SLAPP motion where the plaintiffs voluntarily dismissed their claims while the motion was pending. *Id.*, 66 Cal. App. 4th at 107. The pendency of the motion at the time plaintiffs voluntarily dismissed their claims did not weigh on the court's analysis in finding that the defendant was entitled to fees. *Id.* at 107. Instead, the fact that the anti-SLAPP motion had not been granted nor denied and the prevailing party on the motion had not yet been determined mattered more than that the motion remained "pending" at the time plaintiff dismissed the SLAPP claims. Given that the moving party achieves its anti-SLAPP aims where the plaintiff voluntarily dismisses an alleged SLAPP action in the face of a special motion to strike, "the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under Code of Civil Procedure section 425.16, subdivision (c)." *Coltrain*, 66 Cal. App. 4th at 107. "In making that determination, the critical issue is which party realized its objectives in the litigation. Since the defendant's goal is to make the plaintiff go away with its tail between its legs, ordinarily the prevailing party will be the defendant." *Id.* at 107. Here, much as in *Coltrain*, the special motion to strike had been filed, had not been denied, and was looming over the plaintiffs when they decided to dismiss their complaint. The same can be said of Counterclaim Defendants' anti-SLAPP Motions, their anticipated renewal, and their impact on Jiang's decision to abandon the SLAPP Claims.

Jiang argues that Counterclaim Defendants should not be considered prevailing parties because their anti-SLAPP motions would have failed. In part, Jiang avers that the anti-SLAPP statute does not apply here because the substance of the action does not implicate a "public issue."

6

1  *See* Opp. at 9-10.  This is incorrect.  RTW's act of filing a lawsuit implicates a public issue.

2  Section (e) of the statute clearly provides that statements made in the course of judicial

3  proceedings are subject to the anti-SLAPP statute:

> (e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[.]

9  Cal. Code Civ. Proc. § 425.16(e).  In this case, Jiang's abuse of process counterclaim was based

10  on the allegation that RTW and Qu "filed and used the instant action and complaint for an

11  improper purpose."  FACC (ECF 58) ¶ 240.  "A claim for relief filed in federal district court" like

12  RTW's underlying lawsuit here, indisputably is a statement or writing made before a judicial

13  proceeding that falls within the definition of "public issue" as defined by subdivision (e).  *Navelier*

14  *v. Sletten*, 29 Cal. 4th 82, 90 (2002).

15  Jiang secondarily argues that the anti-SLAPP motions would have failed because her abuse

16  of process claim was at least minimally meritorious.  *See* Opp. at 10-11.  Not so.  Jiang's

17  counterclaim was based on the allegation that RTW and Qu "filed and used the instant action and

18  complaint for an improper purpose."  FACC ¶ 240.  Counterclaim Defendant's filing of a lawsuit

19  falls squarely within California's litigation privilege and thus cannot, without more, give rise to a

20  cause of action.  *See* Cal. Civil Code § 47(b); *Action Apartment Ass'n v. City of Santa Monica*, 41

21  Cal. 4th 1232, 1249 (2007) ("no communication . . . is more clearly protected by the litigation

22  privilege than the filing of a legal action"); *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993)

23  (complaint and subsequent pleadings privileged).  Thus, Jiang fails to persuade that the

24  Counterclaim Defendants should not be considered prevailing parties on the basis that they would

25  not have prevailed on their motions challenging the legal sufficiency of her abuse of process

26  claim.

27  Ultimately, Court follows *Coltrain* and its progeny and finds that Counterclaim

28  Defendants' status as prevailing parties on the anti-SLAPP motions is not dependent on whether

the Court ultimately granted their respective motions. Counterclaim-Defendants "realized [their] objectives in the litigation" related to the SLAPP Claims – Jiang abandoned the SLAPP Claim. *Coltrain*, 66 Cal. App. 4th at 107. Jiang also abandoned the claim for abuse of process in the SACC, and she acknowledged in the stipulation seeking leave to file the SACC that she was eliminating a claim to avoid another anti-SLAPP challenge. ECF 77 at 2 ("Counterclaimant Xuan Jiang seeks to further amend her Counterclaims to moot the issues raised in Counterclaim-Defendants' now-terminated Special Motions to Strike (Dkt. Nos. 51, 54)."). The Counterclaim-Defendants prevailed as to the SLAPP Claims because they realized their objective in the litigation as to the abuse of process counterclaim and related allegations: their dismissal or abandonment.

### C. Meet and Confer Prior to Counterclaim Defendants' Motions

Jiang argues that Counterclaim Defendants' motions for attorney's fees fail because they failed to meet and confer prior to filing their original motions for attorney's fees. Opp. at 17. While the Court denied the earlier Motions for failure to comport with the meet and confer requirement of Civil Local Rule 54, Jiang now avers that Counterclaim Defendants' failure to meet and confer prior to filing the motions for attorney's fees should require denial of these subsequent motions. Opp. at 17.

Jiang rests her present argument on Rule 10 of the District's Guidelines for Professional Conduct, which provides, "Motions should be filed or opposed only in good faith and when the issue cannot be otherwise resolved. For example: a. Before filing a motion, a lawyer should engage in a good faith effort to resolve the issue." Jiang ignores, however, that the Guidelines also state: "The Court does not anticipate that these Guidelines will be relied upon as the basis for a motion; rather, it is the Court's expectation that they will be followed as Guidelines." Neither the Guidelines for Professional Conduct nor the Local Rules have a specific meet-and-confer requirement before filing an anti-SLAPP motion or other motion to strike or dismiss. That said, Counterclaim Defendants met and conferred prior to the filing of the instant motions. Hayward Decl. ¶ 3; Burbidge Decl. ¶¶ 3-4. The Court declines to deny Counterclaim Defendants' Motions on the basis that they failed to meet and confer prior to filing their earlier motions.

### D. Reduction for Cooperation of Counsel

Jiang additionally argues that the instant requests for fees should face reduction for some unspecified reduction in counsel's fees because of cooperation between RTW and Qu.

First, Jiang argues that the $27,000 in fees incurred by Conrad Metlitzky Kane LLP are not recoverable by Counterclaim Defendants because the firm allegedly labored under a known, disqualifying ethical conflict. Opp. at 16 (citing Krzeminski Decl. ¶¶ 2-7, describing notice provided regarding potential conflict of interest). The cases cited by Jiang in support of this argument do not apply here. *See* Opp. at 16-17. In *Image Tech. Serv. v. Eastman Kodak Co.*, 136 F.3d 1354 (9th Cir. 2003), an antitrust case, the district court disqualified the plaintiffs law firm prior to trial on the grounds that it had "represented a division of [defendant] Kodak in other matters." *Id.* at 1355. The plaintiff ultimately prevailed and was awarded attorney fees based on the disqualified firm's work. *Id.* On appeal, the Ninth Circuit reversed the award, citing the "exceptional" circumstances of that case, in which "the law firm representing the antitrust plaintiffs simultaneously represented the antitrust defendant[.]" *Id.* at 1359. The Court explained that if the award were to stand, either the plaintiff would receive a "windfall" or the disqualified firm would receive "compensation which California law says it cannot recover." *Id.* In the less-than-exceptional circumstances of this case, while Conrad Metlitzky Kane LLP ultimately withdrew, the Court never determined that it had an ethical conflict. Further, unlike in *Image Tech. Serv.*, there is no concern that RTW will reap a windfall as opposed to statutorily-entitled reimbursement. Jiang also cites *A.I. Credit Corp. Inc. v. Aguilar & Sebastinelli*, 113 Cal. App. 4th 1072 (2003). *See* Opp. at 16-17. However, that case involved a litigant in a post-judgment collection matter which balked at paying a contingent fee to its own former attorneys, which the court had disqualified because the firm possessed confidential information concerning the opposing party as the result of its prior representation of the defendant. *A.I. Credit Corp.*, 113 Cal. App. 4th at 1077. That is not the case here. The Court did not disqualify Conrad Metlitzky Kane LLP, and the Court will not prohibit recovery of that firm's fees on the basis of an inchoate conflict of interest.

9

Second, Jiang argues for a reduction in fees based on cooperation between RTW's and Qu's counsel. *See* Opp. at 17. This argument is misplaced, as the fact that one party "incidentally benefitted from the legal work performed on behalf of" another party does not diminish either party's right "to recover attorney fees litigating issues common to" both. *Hill v. Affirmed Housing Group*, 226 Cal. App. 4th 1192, 1198 (2014) (quoting *Cruz v. Ayromloo*, 155 Cal. App. 4th 1270, 178 (2007)). Indeed, the California Court of Appeal has expressly found that cooperation by counsel in pursuing anti-SLAPP relief does not invalidate resulting attorney fee requests. *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 559 (2008) (holding that work performed on an anti-SLAPP motion by multiple attorneys representing multiple defendants is not necessarily duplicative nor inherently excessive).

Jiang's arguments against the fees sought by Counterclaim Defendants' earlier counsel as well as the fees sought by their current counsel on the basis that they are unethical or improperly based on the structures of their representation ultimately fail.

### E. Reasonableness of Fees Requested

Jiang argues that the amount of attorney's fees sought by Counterclaim Defendants is "impermissibly unreasonable." Opp. at 14-17. The amount of anti-SLAPP attorney's fee awards are calculated using the lodestar approach. *Ketchum*, 24 Cal. 4th at 1136. The award of attorney's fees and costs must be reasonable, and the court has broad discretion in determining the reasonable amount of attorney's fees and costs. *See Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 362 (1995); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 785 (1996). The court, however, must have "substantial evidence" before it to support the fees award. *See Macias v. Hartwell*, 55 Cal. App. 4th 669, 676 (1997). Further, the prevailing party "bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The Court takes up Jiang's two arguments regarding the reasonableness of the fees sought by Counterclaim Defendants: (1) whether Counterclaim Defendants improperly seek to recover for hours spent outside of the anti-SLAPP motions, and (2) whether Counterclaim Defendants seek to recover unreasonable hourly rates.

10

**1.      Fees Related to the Anti-SLAPP Motions**

Jiang contends that RTW has impermissibly combined costs associated with its FRCP l2(b)(6) Motion to Dismiss the First Amended Complaint with those incurred in preparing the Special Motion to Strike. Opp. at 13-15. A "fee award under the anti-SLAPP statute may not include matters unrelated to the anti-SLAPP motion." *569 E. Cnty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal. App. 5th 426, 433 (2016). "A prevailing defendant on an anti-SLAPP motion is entitled to seek fees and costs 'incurred in connection with' the anti-SLAPP motion itself, but is not entitled to an award of attorney fees and costs incurred for the entire action." *Id.* (citations omitted).

Though Jiang contends that Counterclaim Defendants improperly seek to recover for hours devoted to preparing their respective motions to dismiss the counterclaims, the records summited by counsel reveal the opposite. The time records submitted by RTW demonstrate that the fees sought relate to the anti-SLAPP motion and matters intertwined with the anti-SLAPP motion or motions for attorney's fees. *See* Hayward Decl. (ECF 123-l, 123-2).[2] RTW seeks recovery of the time listed in the final column of ECF 123-1, entitled "Anti-SLAPP Billed," multiplied by the applicable hourly rate. *Id.* RTW does not ask for the entire amount billed for partially-redacted time descriptions. ECF 123-1.[3] Similarly, the time records submitted by Qu demonstrate that the fees sought relate to the anti-SLAPP motion and matters intertwined with the anti-SLAPP motion or motions for attorney's fees. *See* Burbidge Decl., Ex. 1 (ECF 124-1 at 7-9). The proactive discounts of several billing entries by Qu's counsel, Lewis & Llewellyn LLP, additionally weighs in favor of the reasonableness of the fees sought. *See id.* Jiang fails to persuade that Counterclaim Defendants improperly conflate time spent on the motions to dismiss with the anti-SLAPP

---

[2] Nearly all the unredacted time entries relate to the anti-SLAPP motions, except for one – Mark Conrad's 0.5-hour entry on January 8, 2024. ECF 123-1 at 4 ("Review and respond to emails from X. Qu re draft motion to dismiss and circulate further edits to same"). Thus, the Court declines to permit recovery for this time entry.

[3] There is one billing entry for which this does not hold: an entry by William Cooper dated January 2, 2024, in which the purported "meet with M. Conrad re strategy . . . and anti-SLAPP motion (.2)" seeks to recover 0.7-anti-SLAPP hours. ECF 123-1 at 3. Thus, the Court declines to permit recovery for this time entry.

1  motions.  Counterclaim Defendants may recover for the time they clearly spent on the anti-SLAPP
2  motions.

### 2. Hourly Rates

A "reasonable hourly rate" in awarding attorney fees under California's anti-SLAPP statute is the rate prevailing in the community for similar work.  *Kearney*, 553 F. Supp. 2d at 1185.  Here, the hourly rates charged by Conrad Metlitzky Kane are modestly greater than, but in line with, the market rate for attorneys in the San Francisco Bay Area.  Hayward Decl. ¶ 18, Ex. 1, Ex. 3 at 3 (2023 Real Rate Report, ECF 123-3).  The hourly rates charged by Dotson Law, based on market rates for attorneys in the Reno Nevada area, are well below the market rate for attorneys in the San Francisco Bay Area.  *Id.*, Ex. 1.  Finally, the hourly rates charged by Lewis & Llewellyn LLP, which are lower than counsels' customary rates for 2024, are modestly greater than, but in line with, the market rate for attorneys in the San Francisco Bay Area.  *See* Burbridge Decl. (ECF 124) ¶¶ 15-18.

Though Jiang flatly contends that the amount of fees sought by Counterclaim Defendants is impermissibly unreasonable, she does not submit any countervailing evidence demonstrating that the fees sought are excessive.  Jiang does not provide any basis for the Court to dispute or deny the declarations of counsel showing the reasonableness of the rates charged by each attorney within the relevant market.  Instead, she presents only bare and insufficient allegations that the prevailing parties' fees are somehow unreasonable.  Therefore, the Court approves the hourly rates requested by counsel.

//
//
//
//
//
//
//
//

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Counterclaim Defendants' Motions for Attorney's Fees. The Court awards RTW and Qu jointly $26,094.50 for the anti-SLAPP-related work completed by Conrad Metlitzky Kane LLP. The Court awards RTW $23,045.00 for the anti-SLAPP-related work completed by Dotston Law Group. The Court awards Qu $28,204.25 for the anti-SLAPP-related work completed by Lewis & Llewellyn LLP.

**IT IS SO ORDERED.**

Dated: March 25, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**