UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUN THE WORLD INC.,
Plaintiff,

v.

XUAN JIANG,
Defendant.

Case No. 23-cv-03130-AMO

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: Dkt. No. 189

This is a Computer Fraud and Abuse Act ("CFAA") case. Before the Court is Plaintiff Run The World, Inc.'s ("RTW") motion for partial summary judgment. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for July 17, 2026, was vacated. Dkt. No. 196; *see* Civil L.R. 7-6, Fed. R. Civ. Pro. 78(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court **GRANTS** RTW's motion for the following reasons.

## I. BACKGROUND

### A. Founding of RTW

Defendant Xuan Jiang is an "accomplished software engineer," who "earned her bachelor's degree in computer science and engineering from Tianjin University in China in 2013 and earned her master's degree in computer science from Georgia Institute of Technology in 2014." Jiang Verified SACC (Dkt. No. 78) ¶ 11.[1] Xiaoyin Qu and Jiang together formed a software start-up company to provide online video-conferencing software to customers. Jiang Verified SACC ¶ 13.

[1] Verified allegations in a pleading may be used in connection with a summary judgment motion if based on personal knowledge. *See Hayes v. Garcia*, 461 F. Supp. 2d 1198, 1204 (S.D. Cal. 2006) ("A verified complaint or motion may be used as an opposing affidavit under Fed. R. Civ. P. 56 to the extent it is based on personal knowledge . . .").

United States District Court
Northern District of California

Qu and Jiang incorporated RTW as a Delaware corporation in July 2019. *Id.*; *also compare* First Am. Compl (Dkt. No. 149, "FAC") ¶¶ 3, 7, *with* Answer to FAC (Dkt. No. 156) ¶¶ 3, 7.

Jiang was the Director of Engineering and Chief Technical Officer of RTW during her employment. Answer to FAC ¶ 10. "Her duties for RTW included all things technical-related, including designing and building RTW's web browser-based video conferencing platform." Jiang Verified SACC ¶ 15. One of Jiang's responsibilities at RTW included oversight of online domains used by RTW. Answer to FAC ¶ 11.

On July 10, 2019, Jiang agreed to a Restricted Stock Purchase Agreement with RTW. Haward Decl., Ex. 3-3 (Dkt. No. 190 at 82-105, "Purchase Agreement"). In the Purchase Agreement, Jiang, as part of the consideration for her shares in RTW, "transfer[ed] and assign[ed] to the Company [RTW] (i) the business plan of the Company (the 'Business Plan') and (ii) any and all right, title and interest the Purchaser has in the Company's business and any Intellectual Property (as defined below) related to the Company's business, as currently conducted and as contemplated to be conducted pursuant to the Business Plan or otherwise." *Id.* Jiang further agreed "to take all actions reasonably requested by the Company to assist the Company in effecting the foregoing transfer [as described above] and in establishing, perfecting, defending, enforcing and protecting the Company's rights in any of the above transferred items." *Id.* "Intellectual Property" under the Purchase Agreement was defined to include, inter alia, "domain names, web addresses and web sites, and all rights therein and thereto." *Id.*

In September 2019, Jiang registered the domain "rtw.team" for RTW with the domain registrar GoDaddy. Jiang Verified SACC, ¶ 16. The rtw.team domain would be used in connection with RTW's customer-facing website, https://www.runtheworld.today/; for addresses used by RTW's customer-facing products; and for addresses used by RTW internally for developer and database tools. Qu Decl. (Dkt. No. 191) ¶ 3. Jiang also obtained for RTW the domain "rtw.today" (collectively with "rtw.team," the "RTW Domains"). *Id.*

In an October 4, 2019 Letter Agreement, Jiang reaffirmed her prior commitment in the July 10, 2019 Purchase Agreement that she had assigned to RTW "any and all right, title and interest [she] had in [RTW]'s business and any Intellectual Property related to [RTW]'s business, as

currently conducted and as contemplated to be conducted pursuant to the Business Plan and otherwise." Willard Decl., Ex. B to Ex. 1 (Dkt. No. 126 at 27-31) ("Letter Agreement"). Jiang signed a formal offer for employment with RTW on or about October 14, 2019, and started her employment with the title "Director of Engineering." Hayward Decl., Ex. 3-4 (Dkt. No. 190 at 106-114) (10/14/2019 employment agreement). The offer letter included a Proprietary Information and Inventions Agreement. *Id.* Through the Proprietary Information and Inventions Agreement, Jiang agreed that RTW "shall own all right, title and interest (including . . . sui generis database rights and all other intellectual property rights of any sort throughout the world) relating to any and all . . . designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by [Jiang] during the term of [her] employment with [RTW] . . ." *Id.*

**B. Jiang's Departure from and Sabotage of RTW**

On or about April 3, 2023, Jiang sent an email to RTW's funding company, A16Z, stating:

> [A]fter much reflection and consideration, I made the difficult decision to step down as the tech co-founder of Run The World. I am incredibly proud of everything that we have accomplished together, and I have no doubt that Run The World has a bright future ahead of it. However, I have come to the conclusion that it is time for me to move on and pursue a new opportunity.

Hayward Decl., Ex. 3-5 (Dkt. No. 190 at 115-16) (4/3/2023 email). Jiang sent the April 3, 2023 email to Connie Chan of A16Z. Hayward Decl., Ex. 3-1, Jiang Dep., 101:21-23. Jiang further stated in her April 3 email that she was "disappointed that Run The World may not be able to fully capitalize on its potential without [her] continued involvement, [but she] remain[ed] committed to doing everything in [her] power to ensure a successful outcome for all parties involved." Hayward Decl., Ex. 3-5 (Dkt. No. 190 at 115-16).

Subsequently, on or about April 12, 2023, at approximately 3:21 p.m. Pacific time, RTW's counsel sent an email to Jiang confirming acceptance of her resignation and the separation of Jiang from RTW. Hayward Decl., Ex. 3-6 (Dkt. No. 190 at 117-18) (4/12/2023 email); Ex. 3-1, Jiang Dep., 105:3-20.

In response, by email at approximately 3:58 p.m. Pacific time the same day, Jiang claimed she did "not intend to resign from [her] position at Run The World" and threatened to sue RTW

United States District Court
Northern District of California

for discrimination. Hayward Decl., Ex. 3-7 (Dkt. No. 190 at 119-20) (4/12/2023 3:58 p.m. email, XJIANG000461); Ex. 3-1, Jiang Dep., 107:2-108:10.

On or about April 13, 2023, starting before 10:00 a.m. Pacific time, RTW experienced an outage of its customer-facing website, products, and internal coding and database tools. Qu Decl. ¶ 6. RTW personnel pinpointed the outage as being caused by an issue with the rtw.today domain. *Id.*

Shortly after 12:00 a.m. (midnight) Pacific time on or about April 14, 2023, Qu, the CEO of RTW, used the RTW email account previously assigned to Jiang, xuanjiang@runtheworld.today, to access the GoDaddy account through which the RTW Domains were purchased and managed. Qu Decl. ¶ 7; Hayward Decl, Ex. 3-2 (Dkt. No. 190 at 36-81 (GoDaddy Activity Log, Apr. 14, 2023 12:32 a.m. ("Successful sign in with Apple Mac . . . Near Redwood City, California . . ."), RTW05783). Qu renewed the RTW Domains, and RTW engineers reconfigured the DNS settings and fixed the issue. Qu Decl. ¶ 7; *see also* Hayward Decl., Ex. 3-10 (Dkt. No. 190 at 131-32) (GoDaddy 4/14/2023 12:35:49 a.m. notice of updated settings, RTW05267).

Qu also noticed that GoDaddy had recorded another device logging into the account approximately seven hours earlier from near San Jose, California, where Jiang resides. Qu Decl. ¶ 7; *see also* Hayward Decl., Ex. 3-11 (Dkt. No. 190 at 133-34) (GoDaddy Active Sign-ins screen re "Mac OS X – 7 hours ago," RTW00317), and Ex. 3-2 (GoDaddy Activity Log, Apr. 13, 2023 4:40 p.m. "Successful sign in with Apple Mac . . . Near San Jose, California." RTW05783). Jiang admitted during her April 9, 2026 deposition that the 4:40 p.m. sign in – two days after she was notified that her April 3, 2023 resignation had been accepted – was made by her. Hayward Decl., Ex. 3-1, Jiang Dep., 119:1-10.

On April 14, 2023, shortly before noon Pacific time, GoDaddy notified RTW, at the email address xuanjiang@runtheworld.today, that RTW's GoDaddy account settings were updated. Qu Decl. ¶ 8; *see also* Hayward Decl., Ex. 3-2 (GoDaddy Activity Log, Apr. 14, 2023 11:35 a.m. and 11:48 a.m. (both "Near San Jose, California"), RTW05783). Jiang also admitted during her deposition that she had changed the account settings. Hayward Decl., Ex. 3-1, Jiang Dep., 119:11-

United States District Court
Northern District of California

19, 122:3-123:124:9. At that time or shortly thereafter, RTW began experiencing yet another outage of its customer-facing website, products, and internal coding and database tools. Qu Decl. ¶ 8. RTW received numerous customer messages regarding the website and products again being inaccessible. *Id.* ¶ 8; Ex. 2-3 (customer complaint emails after noon on 4/14/2023, RTW00227, 00230). Contemporaneously, the GoDaddy Activity Logs showed a "Username recovery request," "Password Reset request," and "Successful Password Reset" on April 14, 2023, at 12:00-12:01 p.m. (noon). Hayward Decl., Ex. 3-2 (GoDaddy Activity Log, RTW05782). The Activity Log indicated that the "Password Reset request" came from "t*****@gmail.com." *Id.* (GoDaddy Activity Log, RTW05782). Jiang's personal email address is tianjijx3009216038@gmail.com. Hayward Decl., Ex. 3-9 (2/19/2026 email from Jiang to D. Hayward producing GoDaddy Activity Log and other documents). Jiang admitted during her deposition that these interactions were performed by her as well. Hayward Decl., Ex. 3-1, Jiang Dep., 122:3-125:16.

On April 14, 2023, at 5:14 p.m. Pacific time, RTW's counsel sent an email to Jiang advising that she had been formally removed from the board of RTW and attaching the "Action by Written Consent of the Stockholders." Hayward Decl., Ex. 3-8 (Dkt. No. 190 at 121-28, 4/14/2023 email). Later on April 14, 2023, at approximately 5:37 p.m. Pacific time, RTW received an email at xuanjiang@runtheworld.today, the email account previously assigned to Jiang, from the GoDaddy website hosting service indicating that both RTW Domains had been deleted or cancelled. Qu Decl. ¶ 10; Ex. 2-5 (Dkt. No. 191 at 21-23, 4/14/2023 5:37 p.m. email, RTW05559). No one at RTW deleted or cancelled the RTW Domains. Qu Decl. ¶ 10. Jiang admitted that "on April 14, 2023, she removed the 'rtw.team' and 'rtw.today' domains from her personal GoDaddy account." Answer to FAC ¶ 32. During Jiang's deposition, she claimed she had removed the two domains from the GoDaddy account on April 18, 2023, not April 14, 2023. Hayward Decl., Ex. 3-1, Jiang Dep., 126:12-128:4. She also testified, however, that on April 14, 2023, she had removed her work email as access to the account, which she confirmed would have had the effect of preventing anyone from RTW from accessing the account. *Id.*, Jiang Dep., 128:1-129:5. She also added multi-factor authentication "so that no one else except me, my

United States District Court
Northern District of California

personal access e-mail, will have access to the GoDaddy account based on the incident someone forged my credit card and hacked my account." *Id.*, 128:12-20.

**C. RTW's Response to Sabotage**

Jiang's deletions or cancelations of the RTW Domains had the effect of disabling RTW's customer-facing website, customer-facing products, and internal tools. Qu Decl. ¶ 11. The deletions and cancelations effectively shut-down the company's web-based business for more than a week. *Id.* During the one-year period following April 12, 2023, RTW suffered, at a minimum, the following financial losses:

- A $948.00 refund issued to an RTW customer (an individual at Just The News), and a $948.00 refund issued to an RTW customer (an individual at Zybooks) as a result of interruption of service caused by Defendant.
- Legal expenses of no less than $10,307.25 incurred between April 15-20, 2023, analyzing the unauthorized access of RTW's computers and resulting interruption of service, and communicating with RTW and GoDaddy regarding the same.
- Not less than $5,000 in employee time spent investigating the interruption in service, communicating with GoDaddy, RTW's contractors, and RTW's attorneys regarding the interruption in service, and actively attempting to remedy the interruption in service.
- Not less than $500.00 to pay a domestic sales contractor for additional work communicating with and providing support to various RTW customers who were frustrated by the interruption of service.

Qu Decl. ¶¶ 12-13; Ex. 2-6, Wilson Sonsini redacted invoices, RTW05759-5763.

**D. Relevant Procedural History**

On June 23, 2024, Plaintiff RTW filed its original Complaint in this action in the Northern District Court of California, against Jiang, alleging six causes of action: (1) Violation of Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030, et seq.); (2) Violation of California Comprehensive Computer Data Access and Fraud Act (Cal. Pen. Code §§ 502 et seq.); (3) Breach of Contract; (4) Breach of Fiduciary Duty; (5) Trespass to Chattels; and (6) Conversion of Property. Dkt. No. 1.

United States District Court
Northern District of California

On December 5, 2025, RTW served Jiang, by U.S. mail with a courtesy copy by email, with Run The World, Inc.'s first set of requests for admission to Xuan Jiang ("RTW's first RFAs"). Hayward Decl. ¶ 13; Ex. 3-12 (RTW's first RFAs). Jiang did not respond. Hayward Decl. ¶ 13. RTW served Jiang, by U.S. mail with a courtesy copy by email, with its second set of requests for admission to Jiang on January 29, 2026. Hayward Decl. ¶ 14; Ex. 3-13 ("RTW's second RFAs"). That document stated:

> Plaintiff RUN THE WORLD, INC. ("RTW"), by and through its counsel of record, DOTSON, HAYWARD & VANCE, PC and GCA LAW PARTNERS LLP, and pursuant to Rule 36 of the Federal Rules of Civil Procedure, hereby requests that the Defendant XUAN JIANG ("Defendant") admit or deny the following written requests for admission, subject to the instructions and definitions set forth below. *Id.* Pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure, the matters shall be deemed admitted unless said request is responded to within thirty (30) days after service of the request or within such shorter or longer time as the court may allow.

*Id.*, RTW's second RFAs. In a footnote on page two, RTW further advised Jiang of the consequences of not serving timely responses:

> Fed. R. Civ. Proc. 36(a)(3) states: (3) Time to Respond; Effect of Not Responding. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

*Id.*

## II. DISCUSSION

RTW moves for partial summary judgment – it seeks adjudication of only its CFAA cause of action. *See* Dkt. No. 189. Well after the deadline to file a brief in opposition to RTW's motion, Jiang filed a consolidated motion seeking relief from the deadline to file a brief in opposition to RTW's motion, a continuance of the hearing on the motion, and leave to file a late opposition to the motion that the Court granted in part and denied in part. Dkt. No. 195 (Jiang's consolidated motion); Dkt. No. 196 (order). The Court deemed the argument presented in Jiang's consolidated motion to be her late-filed opposition brief and permitted RTW to file a reply in response to the brief. Dkt. No. 196 at 1. Within Jiang's opposition brief, she requested leave to withdraw her

deemed admitted responses to RTW's requests for admission. Dkt. No. 195 at 7-9. The Court first takes up Jiang's request to withdraw the deemed admissions to determine the scope of evidence to be considered, and then the Court analyzes RTW's motion for summary adjudication of its CFAA claim.

**A. Request to Withdraw Deemed Admissions**

Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, a party may serve on another party a written request to admit the truth of any matter within the scope of Rule 26(b)(1). A failure to timely respond to such a request results in the automatic admission of the matter. Fed. R. Civ. P. 36(a)(3). Rule 36(b) of the Federal Rules of Civil Procedure allows for the filing of a motion to withdraw admissions. "[T]wo requirements must be met before an admission may be withdrawn: (1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal." *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001). The first half of Rule 36(b)'s two-part test is satisfied when "upholding the admissions would practically eliminate any presentation of the merits of the case." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). The second half of the test "focus[es] on the prejudice that the nonmoving party would suffer at trial." *Conlon*, 474 F.3d at 623. The decision whether to permit withdrawal or amendment of a response to a request for admission rests in the discretion of the trial court. *See* Fed. R. Civ. P. 36(b); *Conlon*, 474 F.3d at 624. This remains true even if the party seeking to withdraw the deemed admissions satisfies the two-part test set forth in Rule 36(b):

> We have not previously opined on whether Rule 36(b) requires a district court to grant relief when the moving party can satisfy the two-pronged test. We hold that it does not. The text of Rule 36(b) is permissive. . . . Therefore, when a district court finds that the merits of the action will be subserved and the nonmoving party will not be prejudiced, it 'may' allow withdrawal, but is not required to do so under the text of Rule 36(b).

*Conlon*, 474 F.3d at 624-25 (internal citations omitted).

On the first prong of the two-part test under Rule 36(b) – whether withdrawal of the deemed admission would promote the presentation of the merits of the action – Jiang fails to demonstrate that presentation of the admissions practically eliminates presentation of the merits.

*See Conlon*, 474 F.3d at 622. The Court discusses this issue in further depth below, but the deemed admissions, standing alone, do not establish certain elements of RTW's CFAA claim, including whether Jiang accessed a "protected computer," whether she did so without authorization, or whether her actions resulted in the required amount of damage or loss. While there is no genuine issue of material fact as to these elements, RTW submits additional unrebutted evidence with its motion for partial summary judgment beyond the deemed admissions. Thus, there is no need to withdraw the deemed admissions to "promote the presentation of the merits of the action."

On the second prong of the two-part Rule 36(b) test – whether withdrawing the deemed admissions would prejudice RTW, the requesting party, in maintaining or defending the action on the merits – the answer, when compared to Ninth Circuit precedent, is a clear "yes." In *Conlon*, an inmate failed to respond to requests for admissions. *Id.*, 474 F.3d at 620. The United States filed a motion for summary judgment based on the deemed admissions. *Id.* Three days later, the inmate defendant filed a motion for relief under Rule 36(b). *Id.* at 620-21. The district court denied the requested relief and granted the government's motion for summary judgment. *Id.* at 621. In affirming the district court's decision, the Ninth Circuit noted, "Trial courts [have been] advised to be cautious in exercising their discretion to permit withdrawal or amendment of an admission." *Id.* at 621 (citation omitted). The court went on to note that the inmate's motion to withdraw admissions came well after the close of discovery, after the filing of dispositive motions, and on the eve of trial – a stage of the litigation at which the factual record had become fixed and the government had ostensibly made strategic decisions about the presentation of evidence at trial. *Id.* at 624. The Ninth Circuit held that the trial court did not clearly err in finding that the government would face prejudice if the inmate was permitted to withdraw the admissions at that late stage of the case. *Id.*

RTW served its second set of requests for admission on January 29, 2026, and Jiang's responses were due on or about March 3, 2026. They remained unanswered – and deemed admitted – through the discovery cut-off on April 15, 2026, and the dispositive motion due date on May 1, 2026. *See* Dkt. No. 183 (order granting stipulation to modify case scheduling order).

United States District Court
Northern District of California

Although trial may not be as imminent as it was in *Conlon*, all material deadlines have passed while RTW's requests for admission sat unanswered and deemed admitted. RTW, like the government in *Conlon*, was entitled to depend on the binding effect of Jiang's deemed admissions. Jiang may not wait until RTW is no longer able to conduct additional discovery regarding the facts which were deemed admitted, and after RTW has prepared and filed its dispositive motion based in large part on the deemed admissions, only to now seek to undo the effects of her cavalier approach to this case.[2] Thus, the timeline and the potential prejudice faced by RTW are significantly similar to those considered in *Conlon*, in which the government relied on Conlon's deemed admissions "for approximately two and one-half months, through the discovery and dispositive motion cut-off dates[.]" *Id.*, 474 F.3d at 624.

Having considered Jiang's litigation conduct as well as the two factors set forth in Rule 36(b), the Court declines to exercise its discretion in Jiang's favor and will not permit her to withdraw her deemed admissions.[3]

**B. Motion for Partial Summary Judgment**

**1. Legal Standard**

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on a "claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is

[2] The Court notes that Jiang has repeatedly ignored deadlines and shirked her responsibilities to participate in the case. For example, Jiang failed to comply with a Court order instructing her appearance, Dkt. No. 160, failed to timely submit papers to Magistrate Judge Thomas S. Hixson, Dkt. No. 184, and failed to timely file an opposition brief to the instant motion, Dkt. No. 195. This conduct demonstrates a lack of diligence that further weighs against Jiang's requests for relief. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (holding that a party's lack of diligence undermines a showing of good cause for relief).

[3] Jiang avers that she should be permitted to withdraw her deemed admissions to RTW's requests for admission because, as a pro se litigant, she did not fully understand the effect of failing to respond. Dkt. No. 195 at 8. Jiang failed to provide responses on two successive occasions. Hayward Decl. (Dkt. No. 190) ¶ 13, Ex. 3-12 (RTW's first RFAs); *id.* ¶ 14, Ex. 3-13 (RTW's second RFAs). In RTW's second set of requests, it expressly set forth the 30-day deadline and advised Jiang that "Pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure, the matters shall be deemed admitted unless said request is responded to within thirty (30) days after service of the request or within such shorter or longer time as the court may allow." *Id.* Jiang did not need any legal training to understand and comply with these express instructions and warnings. Jiang's pro se status does not justify her failure to respond nor does her pro se status otherwise weigh in the analysis of whether to permit withdrawal of the admissions.

no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25 (noting a moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). The asserted disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (affirming summary judgment in favor of defendants where there was "no evidence in the record from which a trier of fact could have" found for plaintiff).

United States District Court
Northern District of California

When deciding a summary judgment motion, courts must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, when a non-moving party fails to produce evidence rebutting the moving party's showing, then summary adjudication is proper. *Nissan Fire*, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**2. Violation of CFAA**

RTW moves for partial summary judgment – it seeks adjudication of only its CFAA claim. Dkt. No. 189. "The CFAA was enacted to prevent intentional intrusion onto someone else's computer – specifically, computer hacking" and "is best understood as an anti-intrusion statute and not as a misappropriation statute." *HiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022) (internal quotations and citations omitted). It prohibits, among other things, intentionally accessing a computer "without authorization" or by "exceed[ing] authorized access" to obtain information from a protected computer. 18 U.S.C. § 1030(a)(2)(C). The phrase "without authorization" means without permission. *See HiQ Labs*, 31 F.4th at 1195. The phrase "exceeds authorized access" means accessing "a computer with authorization and [using] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). The CFAA includes the following relevant definitions:

> (e) As used in this section –
> (1) the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;
> (2) the term "protected computer" means a computer –
> . . .
> (B) which is used in or affecting interstate or foreign commerce or

> communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States; . . .

18 U.S.C. § 1030(e). The damage asserted in support of a CFAA claim must be "harm to computers or networks, not economic harm due to the commercial value of the data itself." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) (collecting cases). "[L]iability under both clauses stems from a gates-up-or-down inquiry – one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Van Buren v. United States*, 593 U.S. 374, 390 (2021).

The Court takes up in turn the four arguments as to RTW's showing of a CFAA violation: (a) whether Jiang's conduct was directed toward a "protected computer," (b) whether RTW owned the RTW Domains, (c) whether Jiang accessed RTW's protected computer without authorization, and (d) whether RTW suffered the required "damage" and "loss" as required by the statute.

**a. Jiang's conduct was directed toward a "protected computer"**

RTW advances that Jiang violated the CFAA by "intentionally accessing" one or more protected computers "without authorization" and, as a result of such conduct, either "intentionally or recklessly" causing "damage," or causing "damage and loss." FAC ¶¶ 48-49 (citing 18 U.S.C. §§ 1030(a)(5)(B) and 1030(a)(5)(C)). Jiang avers that there remains a genuine dispute of fact about whether she caused damage to a "computer" within the meaning of CFAA. Dkt. No. 195 at 15. She argues that "GoDaddy is not RTW's computer. RTW never owned or operated the GoDaddy servers. . . . RTW's actual servers – the computer running its website and internal tools – were never accessed by Defendant." *Id.* at 15. The Court considered and rejected this precise argument at the pleading stage. Dkt. No. 141 at 9. In significant part, the Court held then, as it does now, that Jiang's acts of inhibiting the use of RTW's customer-facing website, other web-based services, and internal tools by deleting or canceling the RTW Domains involves damage to a "protected computer," regardless of whether that website is hosted on a server owned by third party GoDaddy. *See* Dkt. No. 141 at 9; *see also HiQ Labs*, 31 F.4th at 1195 (holding that servers constitute "protected computers"); *Skyhop Techs., Inc. v. Narra*, 58 F.4th 1211, 1227 (11th Cir. 2023) ("It makes no difference that SkyHop does not own the servers (Amazon does)"); 18 U.S.C.



United States District Court
Northern District of California

§ 1030(e)(1). Jiang deleted, canceled, removed, or otherwise rendered inoperable the RTW Domains, and this had the effect of disabling RTW's customer-facing website, customer facing products, and internal tools. Qu Decl. ¶ 11. Jiang effectively shut-down the company's web-based business for more than a week. *Id.* Therefore, RTW has shown that Jiang's deletion of the RTW Domains caused "harm to computers or networks" within the meaning of the CFAA.

**b. RTW owned the RTW Domains**

Jiang argues that the RTW Domains were in fact her personal property when she deleted, removed, or damaged them. Dkt. No. 195 at 12-15. However, through the July 10, 2019 Purchase Agreement, Jiang "transfer[ed] and assign[ed] to the Company [RTW] . . . (ii) any and all right, title and interest the Purchaser has in the Company's business and any Intellectual Property[.]" Hayward Decl., Ex. 3-3, Purchase Agreement. "Intellectual Property" was defined to include "domain names, web addresses and web sites, and all rights therein and thereto." *Id.* Jiang reaffirmed this commitment in the October 4, 2019 Letter Agreement. Willard Decl. (Dkt. No. 126), Ex. B to Ex. 1. Lastly, the Proprietary Information and Inventions Agreement attached to the October 14, 2019 employment agreement, also signed by Jiang, confirms that Jiang agreed RTW "shall own all right, title and interest (including . . . sui generis database rights and all other intellectual property rights of any sort throughout the world) relating to any and all . . . designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by [Jiang] during the term of [her] employment with [RTW.]" Hayward Decl., Ex. 3-4. These documents demonstrate that the Domains belonged to RTW.

Resisting the conclusion that she transferred any ownership interest in the RTW Domains, Jiang argues that three disputes of material fact remain. First, Jiang argues that "RTW never became the account holder of record at GoDaddy" and that GoDaddy's Terms of Service vest account control rights in the registered account holder." Dkt. No. 195 at 13. But this argument ignores the plain language of the agreements discussed in the preceding paragraph and accordingly fails to establish that RTW lacked ownership. Jiang's argument also rests on a distinction without a difference: the issue is Jiang's unauthorized deletion, removal, or damage to the RTW Domains,



United States District Court
Northern District of California

not the GoDaddy account in which they were hosted. Jiang intentionally accessed its protected computers without authorization. 18 U.S.C. §§ 1030(a)(5)(B)-(C).

Second, Jiang argues that because she signed the Purchase Agreement in July 2019, then registered the RTW Domains in September 2019, the RTW Domains could not have been within the scope of the Purchase Agreement. Dkt. No. 195 at 13-14. This argument fails on two independent grounds. Jiang fails to establish that the timing of the registration took the RTW Domains outside the scope of the Purchase Agreement because the transfer and assignment language in the Purchase Agreement was not limited to RTW-related "Intellectual Property" (defined to include "domain names") that existed as of the effective date of the Purchase Agreement. Willard Decl., Ex. A at 1. Rather, Jiang transferred and assigned all "Intellectual Property related to the Company's business, as currently conducted and as contemplated to be conducted pursuant to the Business Plan or otherwise." *Id.* Jiang further fails to establish that the registration of the RTW Domains fell outside the scope of the Purchase Agreement because she expressly admits that she, while a shareholder and co-founder of RTW, and having transferred and assigned all domain names related to RTW's current and contemplated future business, registered the RTW Domains on RTW's behalf: "I registered these domains on behalf of RTW's business, but the account remained in my name because RTW never asked me to transfer it." Dkt. No. 195 at 22.

Third, Jiang contends that the RTW Domains must not have been transferred or assigned by Jiang to RTW, or the parties would have included them in the non-exhaustive list entitled "Certain RSPA Materials" attached as Exhibit A to the October 4, 2019 "side letter" (the "Letter Agreement"). *See* Dkt. No 189 at 9; *see also* Willard Decl., Ex. B. However, Exhibit A to the side letter did not purport to serve as an all-inclusive list of the intellectual property transferred by Jiang to RTW through the Purchase Agreement. To the contrary, the list was entitled, "Certain RSPA Materials." *Id.* The body of the side letter also provided a limitation, "The RPSA Materials included the items described in Exhibit A attached to this letter." *Id.*

The RTW Domains (rtw.team and rtw.today) clearly fall within the scope of the intellectual property transferred and assigned by Jiang to RTW through the Purchase Agreement,

which specifically included "domain names." Purchase Agreement, Willard Decl., Ex. A. Therefore, contrary to Jiang's contentions, there is no genuine dispute of material fact regarding the ownership of the RTW Domains – Plaintiff owned them pursuant to the Purchase Agreement.

**c. Jiang accessed RTW's protected computers without authorization**

Jiang maintains that there remains a genuine issue of material fact regarding whether she lacked authorization to access RTW's protected computers and delete or interfere with the RTW Domains. Dkt. No. 195 at 10-12. The CFAA prohibits, among other things, intentionally accessing a computer "without authorization" or by "exceed[ing] authorized access" to obtain information from a protected computer. 18 U.S.C. § 1030(a)(2)(C). The phrase "without authorization" means without permission. *See HiQ Labs*, 31 F.4th at 1195. RTW has also established that Jiang's act of accessing RTW's protected computers was without authorization. A person is authorized to access a computer when the owner of the computer gives permission to use it. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132-33 (9th Cir. 2009); *see also HiQ Labs*, 938 F.3d at 999 ("We have held in another context that the phrase 'without authorization' is a non-technical term that, given its plain and ordinary meaning, means accessing a protected computer without permission." (internal quotation marks and citation omitted)). A defendant violates the "without authorization" provisions of the CFAA when they have "no permission to access a computer or when such permission has been revoked explicitly. Once permission has been revoked, technological gamesmanship or enlisting of a third party to aid in access will not excuse liability." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016). In the context of employment, "whether access is authorized or unauthorized 'depends on actions taken by the employer.' " *Domain Name Comm'n Ltd. v. DomainTools, LLC*, 449 F. Supp. 3d 1024, 1027 (W.D. Wash. 2020) (quoting *Brekka*, 581 F.3d at 1134-35). In *Brekka*, the Ninth Circuit explained, "There is no dispute that if Brekka accessed LVRC's information on the LOAD website after he left the company in September 2003, Brekka would have accessed a protected computer 'without authorization' for purposes of the CFAA." 581 F.3d at 1136.

Here, it is undisputed that RTW made clear, at latest through its attorney's email sent April 12, 2023, that Jiang was no longer employed by the company. *See* Hayward Decl., Ex. 3-6 (4/12/2023 email); Ex. 3-1, Jiang Dep., 105:3-20. Despite the fact that Jiang was no longer an RTW employee, the following morning on April 13, 2023, Jiang proceeded to cause an outage of RTW's customer-facing website, products, and internal coding and database tools. *See* Qu Decl. ¶ 6; *see also* Hayward Decl., Ex. 3-1, Jiang Dep., 119:11-19, 122:3-124:9. Jiang admitted during her deposition that she signed-in to the GoDaddy account a 4:40 p.m. on April 13, 2023. Hayward Decl., Ex. 3-1, Jiang Dep., 119:1-10. Jiang further admitted that she accessed the account yet again shortly before noon on April 14, 2023, and updated the account settings, including the password. Hayward Decl., Ex. 3-1, Jiang Dep., 119:11-19, 122:3-124:9. Later on April 14, 2023, RTW received an email notification to Jiang's former RTW address that the RTW Domains had been deleted or canceled. Qu Decl. ¶ 10; Ex. 2-5, 4/14/2023 5:37 p.m. email, RTW05559. Jiang also testified during her deposition that on April 14, 2023, she removed her work email as access to the account, and added multi-factor authentication, so that no one except her would have access going forward. Hayward Decl., Ex. 3-1, Jiang Dep., 126:12-128:4. Regardless of whether Jiang resigned, as RTW contends, or RTW terminated her employment, as Jiang concedes, this subsequent act of accessing RTW's protected computers after her separation from the company was clearly "without authorization" under the CFAA. *Cf. Brekka*, 581 F.3d at 1136.

The undisputed evidence described above is sufficient to establish that Jiang accessed RTW's protected computers without authorization. RTW also establishes liability based on Jiang's admission that she or someone acting on her behalf caused or contributed to cause the outage of RTW's customer-facing website on April 13 and April 14, 2023. Hayward Decl., Ex. 3-13, RTW's second RFAs. "Once a matter has been deemed admitted under Rule 36, even by default, the court may not consider evidence that is inconsistent with the admission." *American Gen. Life & Acc. Ins. Co. v. Findley*, 2013 WL 1120662, at *3 (C.D. Cal. Mar. 15, 2013) (citing *999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985) and *Cook v. Allstate Ins. Co.*, 337 F. Supp. 2d 1206, 1210 (C.D. Cal. 2004)). Jiang's admission clearly covers the offending conduct, whether it consisted of removing or deleting the RTW Domains from the GoDaddy account, or

United States District Court
Northern District of California

some other attack on RTW's protected computers. Jiang's admission further establishes her liability under the CFAA.

Two additional points merit further discussion. First, Jiang maintains that she could not have removed the RTW Domains from the GoDaddy account on April 14, 2023, because she has produced a GoDaddy email notification dated April 18, 2023, showing that she "deleted or canceled" the .TEAM Domain registration on that date. *See* Dkt. No. 195 at 11. Thus, Jiang claims, she could not have previously deleted the rtw.team domain on April 14, 2024. However, the evidence shows that GoDaddy sent a nearly identical notice to Jiang's former RTW email address on April 14, 2023, which announced:

> Here's what you deleted or canceled today:
> .TEAM Domain Registration (associated with: rtw.team)
> .TODAY Domain Registration (associated with: rtw.today).

Qu Decl. (Dkt. No. 191) ¶ 10; Ex. 2-5. Thus, Jiang's argument is not disturbed by her purported deletion of the Domains on April 18 – according to GoDaddy, the RTW Domains were indeed "deleted or canceled" on April 14, 2023, the same day Jiang admits having accessed the account, updating the account settings including the password, removing her work email as the point of access, and adding multi-factor authentication so only she would have access. *See* Hayward Decl., Ex. 3-1, Jiang Dep., 119:11-19, 122:3-124:9.

Second, Jiang suggests that even if she did access the GoDaddy account "after April 12," she did so because she reasonably believed she needed to do so to protect her own account from fraudulent activity. Dkt. No. 195 at 12. However, pursuant to Title 18 U.S.C. §§ 1030(a)(5)(B) and (C), RTW need only show that Jiang "intentionally access[ed] a protected computer," and that she did so "without authorization." Jiang points to no authority requiring a CFAA plaintiff to establish that an unauthorized user subjectively believed that she lacked authorization.

Therefore, Jiang fails to show a genuine dispute of material fact, and RTW establishes that she accessed its protected computers without authorization.

**d. RTW suffered the required "damage" and "loss"**

In order to support a civil cause of action under Title 18 U.S.C. § 1030(g) based on either Title 18 U.S.C. §§ 1030(a)(5)(B) or 1030(a)(5)(C), RTW must show "loss" during any one-year

United States District Court
Northern District of California

period "aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). A showing of "damage" is also required to recover under either subsection. 18 U.S.C. §§ 1030(a)(5)(B), 1030(a)(5)(C). "Damage" and "loss" are defined terms. 18 U.S.C. § 1030(e)(8), (11). Those definitions have been interpreted as focusing on "technological harms – such as the corruption of files – of the type unauthorized users cause to computer systems and data." *Van Buren*, 593 U.S. at 392. The damage must be "harm to computers or networks, not economic harm due to the commercial value of the data itself." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) (collecting cases).

RTW has suffered "damage" as that term is defined at Title 18 U.S.C. § 1030(e)(8). The RTW Domains constitute RTW's intangible property, and Jiang deleted them. *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010); *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir, 2003). RTW also suffered a "loss" within the meaning of Title 18 U.S.C. § 1030(e)(11) in an amount not less than $17,703.25. The CFAA defines the term "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]" 18 U.S.C. § 1030(e)(11). "Loss" may include attorney fees incurred to address the breach. *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 778 (N.D. Cal. 2017) ("[P]ursuant to the plain language and consistent with persuasive caselaw, Facebook's attorney's fees and investigation and enforcement costs through March 2009 are compensable as long as those costs were reasonably incurred responding to the offense").

Based on the evidence discussed above, including Jiang's deposition testimony as well as her failure to respond to RTW's second RFAs, Jiang deleted or canceled the RTW Domains. Jiang's deletions or cancelations of the RTW Domains had the effect of disabling RTW's customer-facing website, customer-facing products, and internal tools. Qu Decl. ¶ 11. The deletions and cancelations effectively shut-down the company's web-based business for more than a week. *Id.* During the one-year period following April 12, 2023, RTW suffered, at a minimum, the following financial losses:

- A $948.00 refund issued to an RTW customer (an individual at Just The News), and a $948.00 refund issued to an RTW customer (an individual at Zybooks) as a result of interruption of service caused by Jiang.
- Legal expenses of no less than $10,307.25 incurred between April 15-20, 2023, analyzing the unauthorized access of RTW's computers and resulting interruption of service, and communicating with RTW and GoDaddy regarding the same.
- Not less than $5,000 in employee time spent investigating the interruption in service, communicating with GoDaddy, RTW's contractors, and RTW's attorneys regarding the interruption in service, and actively attempting to remedy the interruption in service.
- Not less than $500.00 to pay a domestic sales contractor for additional work communicating with and providing support to various RTW customers who were frustrated by the interruption of service.

Qu Decl. ¶¶ 12-13, Ex. 2-6, Wilson Sonsini redacted invoices, RTW05759-5763.

It is under this CFAA prong that Jiang advances that summary adjudication should not issue because she needs further discovery pursuant to Rule 56(d). Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The purpose of Rule 56(d) relief is to prevent the nonmoving party from being 'railroaded' by a summary judgment motion that is filed too soon after the start of a lawsuit for the nonmovant to properly oppose it without additional discovery." *Hollyway Cleaners & Laundry Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996, 1003 (C.D. Cal. 2016) (citation omitted). A party seeking Rule 56(d) relief bears the burden of demonstrating that "(1) it has set forth in affidavit [or declaration] form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir.

United States District Court
Northern District of California

1998)); *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to Rule 56([d]) must identify by affidavit [or declaration] the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.").

Jiang posits that she should receive complete, unredacted billing records from RTW's counsel for the period of April to June 2023. *See* Dkt. No. 195 at 19-20. Jiang contends that RTW's submission of redacted attorney time records to establish damages incurred attempting to remedy the outages constitutes a blanket waiver of attorney-client privilege with respect to the rest of RTW's attorney billing during that time period. *Id.* But crucially, Jiang does not identify what specific facts she expects those billing records to reveal. *Cf. Home & Fin. Ctr.*, 525 F.3d at 827. Nor does Jiang identify how the complete billing records, including those reaching beyond the scope necessary for RTW's counsel to respond to the security breach, would preclude summary judgment. Jiang's Rule 56(d) request accordingly represents nothing more than a failed attempt at a fishing expedition into arguably privileged attorney billing records. This does not merit relief under Rule 56(d).

* * *

In sum, RTW establishes a violation of the CFAA. The Court will grant the motion for partial summary judgment as to RTW's CFAA claim.

**C. Declination of Supplemental Jurisdiction**

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Ninth Circuit has emphasized that "[i]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise

jurisdiction over the remaining state law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

Having disposed of the sole remaining federal claim in this matter, there is no longer a persuasive reason for the Court to exercise supplemental jurisdiction over RTW's state law claims. The Court finds that the balance of factors does not weigh in favor of retaining jurisdiction. Most importantly, the Court finds that no judicial efficiencies can be achieved by retaining jurisdiction over the state law claims when the parties remain actively engaged in litigation in the Superior Court. Therefore, the Court exercises its discretion to decline supplemental jurisdiction over RTW's remaining state law causes of action and will dismiss those claims without prejudice to refiling them in the California Superior Court.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** RTW's motion for partial summary judgment as to its claim against Jiang for violation of the CFAA. The Court further orders that Plaintiff is entitled to recover from Defendant the sum of $17,703.25 for its CFAA damages. The Court **ORDERS** RTW to file a proposed form of judgment as to this cause of action within two weeks from the date of this order. Jiang may file a response, if any, within seven (7) days following RTW's submission.

The Court **DECLINES** supplemental jurisdiction over RTW's remaining state law claims and **DISMISSES** RTW's remaining causes of action without prejudice to refiling in state court.

**IT IS SO ORDERED.**

Dated: August 25, 2026



**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**